UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CLIFFORD B. SMITH,

       Petitioner,
v.               **DECISION AND ORDER**
                 16-CV-531S
UNITED STATES OF AMERICA,     12-CR-39S

       Respondent.

**I. INTRODUCTION**

Presently before this Court is Petitioner Clifford B. Smith's pro se Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255. (Docket No. 111.) For the reasons discussed below, Smith's motion is denied.

**II. BACKGROUND**

On December 22, 2014, Smith appeared before this Court and pleaded guilty to Counts 2, 5, 8, 11, and 15 of the 15-count second superseding indictment against him. (Docket Nos. 36, 85, 86.) Counts 2, 5, and 8 each charged Smith with violating 18 U.S.C. § 2113 (a) (bank robbery); Count 11 charged Smith with violating 18 U.S.C. §§ 2113 (a) and (d) (bank robbery and bank robbery while jeopardizing the lives of others by use of a dangerous weapon); Count 15 charged Smith with violating 18 U.S.C. § 1512 (b)(1) (tampering with a witness). (See Docket No. 36.)

Smith pleaded guilty with the benefit of a plea agreement, in which he agreed that his maximum possible sentence by statute for each of Counts 2, 5, and 8 was a term of imprisonment of 20 years, a fine of $250,000, a mandatory special assessment of $100, and a term of supervised release of three years (Plea Agreement, Docket No. 85, ¶ 1 (a));

1

his maximum possible sentence by statute for Count 11 was a term of imprisonment of 25 years, a fine of $250,000, a mandatory special assessment of $100, and a term of supervised release of five years (id. ¶ 1 (b)); and his maximum possible sentence by statute for Count 15 was a term of imprisonment of 20 years, a fine of $250,000, a mandatory special assessment of $100, and a term of supervised release of three years (id. ¶ 1 (c)).

Smith further agreed that for purposes of the Sentencing Guidelines, he had a combined total offense level of 29 and a criminal history category of VI, which resulted in a Guidelines sentencing range of 151 to 188 months' imprisonment, a fine of $15,000 to $150,000, and a term of supervised release of 2 to 5 years. (Id. ¶¶ 5-25.) As part of this calculation, Smith specifically agreed that his criminal history category should be adjusted upward to a VI from a II under § 5K2.21 of the United States Sentencing Guidelines ("U.S.S.G.") because criminal history category II did not reflect the actual seriousness of the offenses based upon conduct underlying a charge dismissed as part of the plea agreement that did not enter into the determination of the applicable guideline range.[1] (Id. ¶ 24.)

Smith also acknowledged and waived his rights to appeal and collaterally attack his guilty plea and sentencing under certain circumstances as follows:

> The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 25 [Guidelines' Application, Calculations and Impact], above,

---

[1] Smith reiterated his agreement with and understanding of this upward adjustment during his plea allocution. (See Plea Transcript, Docket No. 109, pp. 15-17.)

2

> notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section VI of this agreement [Restitution and Financial Penalty Provisions].
>
> The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

(Id. ¶¶ 36, 37.)

Smith further acknowledged that he had a full opportunity to discuss the terms of the plea agreement with his lawyer, that he understood all of the consequences of his guilty plea, that he fully agreed with the contents of the plea agreement, and that he was entering the plea agreement voluntarily and of his own free will. (Id. p. 18.)

On May 6, 2015, this Court sentenced Smith to 151 months' imprisonment on each count to run concurrently, no fine, 3 years' supervised release on each count to run concurrently, restitution of $31,392, and a $500 special assessment. (Docket Nos. 92, 95.) This sentence fell at the lowest end of the Guidelines range contemplated in the plea agreement. (Plea Agreement, ¶ 25.) The Clerk of Court entered judgment on May12, 2015. (Docket No. 95.)

Three weeks after sentencing, Smith filed a Notice of Appeal. (Docket No. 96.) On June 5, 2017, the United States Court of Appeals for the Second Circuit dismissed Smith's appeal as barred by the appeal waiver in his plea agreement, which Smith failed to demonstrate was unenforceable. (Docket No. 120.)

Smith filed the instant Motion to Vacate, Set Aside, or Correct his Sentence on

June 27, 2016. (Docket No. 111.) After full briefing (Docket Nos. 111, 114, 115), this Court took the motion under advisement without oral argument.

### III. DISCUSSION

**A.     § 2255 Proceedings**

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of their sentences. That section provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal. See Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994)). Relief under § 2255 is therefore narrowly limited, with collateral attack on a final criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)). This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur. See Bokun, 73 F.3d at 12 (citations

omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review. See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010). First, the "mandate rule" bars re-litigation of issues already decided on direct appeal. See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.") This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)). This rule also bars ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, as well as those involving factual predicates that while not explicitly raised on direct appeal, were impliedly rejected by the appellate court mandate. See id. at 53-54 (citations omitted). An exception to this rule exists for cases involving intervening changes in the law, in which case the petitioner "must show that there is new law which, when applied to their claims, would result in a different disposition." Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing United States v. Loschiavo, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of claims that could

have been raised on direct appeal, unless the petitioner shows cause for failing to raise the claims on direct review and actual "prejudice" or actual innocence. See Bousley, 523 U.S. at 622-23 (citations omitted); see also Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.") This rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of whether they could have been raised, or were raised, on direct appeal. See Massaro v. United States, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Leave of court is required to engage in discovery, which may be granted for good cause. See Rule 6 (a). Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[2] Id. The party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents." Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing. Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]." Rule 8 (a). If a hearing is necessary, the court must appoint an attorney to any moving

---

[2] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rule 6 (a).

party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A. See Rule 8 (c). A hearing is generally warranted only where the petitioner establishes a plausible claim. See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see, e.g., Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims). However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. See, e.g., Machibroda, 368 U.S at 494, 82 S. Ct. 510; United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

Finally, waiver principles also apply. It is by now well established that a knowing and voluntary waiver made as part of a plea agreement is presumptively and generally enforceable. See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam); see also United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011); United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001). "An enforceable waiver bars claims based on grounds that arose after, as well as before, the [plea] agreement was signed." Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005). Thus, "[i]n no circumstance . . . may a [petitioner] who has secured the benefits of a plea agreement and knowingly

7

and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless." United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993). Waivers, however, are strictly construed against the government due to its greater bargaining power and because it usually drafts the plea agreement. See Yushuvayev v. United States, 532 F. Supp. 2d 455, 468 (E.D.N.Y. 2008).

There are, however, narrow exceptions to the general enforceability of waivers, including:

> (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

Sanford, 841 F.3d at 580 (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)).

To determine whether a waiver is enforceable, courts examine the underlying record and may rely on a defendant's sworn statements during the plea allocution, see Salerno v. Berbary, 389 F. Supp. 2d 480, 484 (W.D.N.Y. 2005), which statements "carr[y] such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony," United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001). But even "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which a waiver has been procured," such as a plea agreement. Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002). A waiver

8

may thus be unenforceable if the petitioner has a meritorious claim that it was procured as the result of ineffective assistance of counsel. See United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004). Ineffective-assistance-of-counsel claims involving post-plea events, however, do not survive the waiver. See United States v. Laskaris, No. 11-CR-364, 16-CV-7207, 2018 WL 4863591, at *2 (E.D.N.Y. Sept. 28, 2018) (collecting cases).

Relatedly, the valid entry of a guilty plea "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006); see Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973) (noting that if a defendant validly admits guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea").

Ultimately, the petitioner bears the burden of proving entitlement to relief under § 2255 by a preponderance of the evidence. See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)); see also Triana v. United States, 205 F.3d 36, 30 (2d Cir. 2000).

**B.   Smith's Claims**

Construing Smith's submissions and arguments liberally as required, see Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999) (per curiam), this Court finds that his claims fall into two categories: (1) claims challenging the entry of the plea; and (2) claims alleging sentencing errors and non-plea-related ineffective assistance of counsel.

As it relates to the first category, Smith claims (1) that he was coerced into signing

the plea agreement because he was misled to believe that he would otherwise qualify as a career offender under U.S.S.G. § 4B1.1 if convicted at trial, (2) that his lawyer was ineffective for failing to review the plea agreement with him, (3) that his lawyer was ineffective for allowing him to sign the "disingenuous" plea agreement, and (4) that his "judgment was lax" at the time he entered his plea due to his anxiety disorders[3].

As it relates to the second category, Smith claims (1) that his sentence was unconstitutionally enhanced because he was improperly treated as a career offender with a criminal history category VI, (2) that this Court used an incorrect criminal history category (i.e., VI) in its Guidelines calculation, (3) that this Court improperly applied U.S.S.G. § 5K2.21 (Discharged and Uncharged Conduct (Policy Statement)), (4) that the United States Supreme Court's decision in Johnson v. United States[4] should have been anticipated and applied, and (5) that his lawyer was ineffective for not identifying and correcting these errors at the time of sentencing.

These claims are resolved below.

**1. Smith's entry of his guilty plea was not the product of ineffective assistance of counsel, but rather, was a knowing, voluntary, and intelligent decision.**

Smith essentially asserts that he did not knowingly and voluntarily enter his guilty plea because he did so under the belief that he would qualify as a career offender subject to enhanced penalties if convicted at trial. He further contends that his entry of the guilty plea was the product of his lawyer's ineffectiveness in not reviewing the plea agreement with him and allowing him to plead guilty under the mistaken belief that he may qualify as

---

[3] This claim is raised for the first time in Smith's reply papers. (See Docket No. 115, pp. 2-3.)

[4] 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) (striking the residual clause in the Armed Career Criminal Act, 18 U.S.C. § 924 (e)(2)(B)(ii)).

10

a career offender. He also suggests that he lacked sufficient mental competency to enter his plea.

As to the first claim, Smith believes that he would not have qualified as a career offender if convicted at trial because one of his previous convictions would have been too old to count in the career-offender calculation. Under U.S.S.G. § 4B1.1, a defendant qualifies as a career offender if he was at least 18 years old when he committed the instant offense of conviction, the instant offense of conviction is a felony that is either a crime of violence or a controlled substances offense, and the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. The two prior felony convictions must count separately under U.S.S.G. § 4A1.1 (a), (b), or (c) to count in the career-offender calculation. See U.S.S.G. § 4B1.2 (c).

Here, Count 1 of the second superseding indictment charged a conspiracy to commit bank robbery "[b]eginning sometime on or before September 12, 2011." (Docket No. 36.) As set forth in the PreSentence Investigation Report, Smith had two prior felony convictions for a crime of violence or controlled substance offense: (1) Attempted Robbery, 2d Degree (Class D Felony) for which he was sentenced to 5 years' probation on September 27, 2001 (crime of violence); and (2) Criminal Sale of a Controlled Substance, 4th Degree (Class C Felony) for which he was sentenced to 42 months' to 7 years' imprisonment on September 29, 2003 (controlled substance offense). (PreSentence Investigation Report, Docket No. 94, ¶¶ 74, 75.) Each of these prior sentences is within 10 years of the conduct charged in Count 1, and each would therefore have been included to calculate Smith's criminal history category had he been convicted of Count 1 after trial. See U.S.S.G. §§ 4A1.1, 4A1.2.

Consequently, Smith was correctly informed that he would qualify as a career offender if he elected to go to trial on the second superseding indictment and was convicted. His first claim therefore fails.

Smith's second claim also fails. He claims that his guilty plea was the product of ineffective assistance of counsel, not a knowing and voluntary decision, because his lawyer allowed him to plead guilty under the mistaken belief that he may otherwise qualify as a career offender and did not review the plea agreement with him. The first point is resolved above: Smith would have qualified as a career offender if convicted at trial. And the second point is refuted by the plea agreement and plea allocution, which both demonstrate that Smith reviewed the plea agreement with his lawyer and thereafter knowingly and voluntarily entered his guilty plea. Similarly, Smith's third claim—that he was not mentally competent to enter his plea—is also refuted by his plea allocution.

In addition to Smith acknowledging in the written plea agreement that he read the agreement, that he had a full opportunity to discuss the agreement with his lawyer, that no promises or representations not contained in the agreement had been made to him, that he understood all of the consequences of his guilty plea, that he fully agreed with the contents of the plea agreement, and that he was entering the plea agreement voluntarily and of his own free will (<u>see</u> Plea Agreement, p. 18), he also demonstrated that his plea was knowing and voluntary before this Court:

> Court: All right. Any other promises made to you that you are relying upon that are not contained in this written agreement?
>
> Defendant: No, your Honor.
>
> Court: This is it, right, the totality?

| | | |
|---|---|---|
| Defendant: | Yes. | |
| Court: | Anybody force or threaten you to sign it? | |
| Defendant: | No. | |
| Court: | You signed it on the advice of your attorney? | |
| Defendant: | Yes, your Honor. | |
| Court: | All right. And, Miss Burger, you signed and advised your client to sign? | |
| Burger: | Yes. | |

(Plea Transcript, Docket No. 109, pp. 19-20.)

| | |
|---|---|
| Court: | Okay. With respect to each of [Counts 2, 5, 8], Mr. Smith, I'm convinced that your plea of guilty is knowing, you understand the terms[,] conditions and possible consequences, correct? |
| Defendant: | Yes, your Honor. |
| Court: | All right. It's voluntary, is that a fair statement to say? |
| Defendant: | Yes. |

* * *

| | |
|---|---|
| Court: | Okay. Again, [with respect to Count 11] I'm convinced that your plea of guilty is knowing, correct? |
| Defendant: | Yes. |
| Court: | Voluntary? |
| Defendant: | Yes. |

* * *

| | |
|---|---|
| Court: | Okay. With respect to Count 15, I find that charge to be knowing, that plea to be knowing, |

> > voluntary, correct?
>
> Defendant: Yes.

(Id. pp. 21-24.)

Smith also confirmed his communication with his lawyer:

> Court: You've had enough time, Mr. Smith, to review that plea agreement?
>
> Defendant: Yes, your Honor.
>
> Court: Okay. And you're satisfied with your lawyer?
>
> Defendant: Yes, your Honor.
>
> Court: You've listened to her legal advice?
>
> Defendant: Yes.

(Id. pp. 2-3.)

> Court: Okay. Those are your maximum penalties. We'll talk about the guideline ranges. I think you talked both about guidelines and maximums with your attorney, fair statement?
>
> Defendant: Yes.

(Id. pp. 8.)

> Court: [After discussing supervised release provisions.] Okay. And you've discussed that with your lawyer as well?
>
> Defendant: Yes, your Honor.

(Id. pp. 8-9.)

Finally, Smith confirmed his mental competency:

> Court: Okay. And are there any issues with respect to Mr. Smith's competency, Miss Burger?

14

| | Burger: | No, Judge. |
|---|---|---|

(Id. p. 3.)

| | Court: | All right. Did you have any drugs or alcohol? |
|---|---|---|
| | Defendant: | No. |
| | Court: | Do you take medications of any kind? |
| | Defendant: | No, your Honor. |
| | Court: | All right. Are you under any care for any psychiatric or any controlled substances problem at the present time? |
| | Defendant: | No, your Honor. |

(Id. p. 5.)

| | Court: | Any difficulty understanding me or your lawyer? |
|---|---|---|
| | Defendant: | No, your Honor. |
| | Court: | Okay. When you do, let me know, all right? |
| | Defendant: | All right. |

(Id. p. 6.)

| | Court: | [At conclusion of the proceeding.] All right. And, Mr. Smith, anything you don't understand so far? |
|---|---|---|
| | Defendant: | No, your Honor. |

(Id. p. 19.)

It is clear from this allocution that Smith entered his plea knowingly and voluntarily and had a sufficient mental state to do so. From this plea colloquy, it can also be determined that Smith's lawyer did not provide ineffective assistance of counsel as it relates to Smith's decision to enter the plea.

Not all ineffective-assistance-of-counsel claims are barred by enforceable waivers

because "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured," such as a plea agreement. Frederick, 308 F.3d at 195; see El Saleh v. United States, 13-CV-1567 (DLI), 2016 WL 4734601, at *3 (E.D.N.Y. Sept. 9, 2016) ("[A] defendant cannot be bound by an appeal waiver if the decision to enter a plea agreement was the product of counsel's ineffective assistance") (citing Hernandez, 242 F.3d at 114)). Thus, "[a]n ineffective assistance of counsel claim survives the guilty plea or the appeal waiver *only* where the claim concerns the advice the defendant received from counsel." Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008) (emphasis added). This is because, if a petitioner challenges counsel's effectiveness in connection with the plea agreement itself, he is in essence challenging the constitutionality of the process by which he waived his right to collaterally attack the sentence, and his claim therefore survives the waiver. Id. ("although challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's advice about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does."); see also El Saleh, 2016 WL 4734601, at *3 ("[W]here an attorney's ineffective assistance caused a defendant to agree to a waiver, a court must look past the waiver and examine the underlying merits of the ineffective assistance claim."). In short, ineffective-assistance-of-counsel claims that affect the plea process survive the waiver, and those that do not, do not. See id. at *5.

Here, Smith maintains that his lawyer failed to review his plea agreement with him. This contention, however, is not borne out by the plea agreement or plea allocution, both of which contain Smith's clear affirmations that he read the agreement, had the

16

opportunity to discuss it with his lawyer, discussed his sentencing exposure with his lawyer, and listened to his lawyer's advice. Relying on these sworn statements, this Court finds that Smith's entry of his guilty plea was not the product of ineffective assistance of counsel, but rather, was a knowing, voluntary, and intelligent decision. This claim therefore fails. See Juncal, 245 F.3d at 171 ("[Plea allocution] testimony carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.") (citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.")).

**2. Smith's sentencing-error and non-plea-related ineffective-assistance-of-counsel claims fail.**

Smith asserts a number of sentencing-error and non-plea-related ineffective-assistance-of-counsel claims. He contends that he was unconstitutionally treated as a career offender, sentenced using an incorrect criminal history category, subject to a misapplication of U.S.S.G. § 5K2.21, and not afforded the benefit of Johnson v. United States. And he further contends that his lawyer was ineffective for allowing these alleged errors to go unaddressed and uncorrected at sentencing.

Having found that Smith entered his guilty plea knowingly and voluntarily, this Court must enforce the waiver provisions of his plea agreement. In paragraphs 36 and 37 of the plea agreement, Smith agreed to waive his rights to appeal and collaterally attack his sentence if this Court sentenced him within or less than the calculated

17

sentencing range for imprisonment, which it did. Smith also agreed that the appeal waiver would extend to previously unknown facts or changes in the law. Smith's waiver provision is enforceable and bars each of his sentencing-error and ineffective-assistance-of-counsel claims that do not challenge the constitutionality of the process by which Smith waived his collateral attack and appeal rights. See Parisi, 529 F.3d at 138-39; see also United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) ("[D]efendant claims that his waiver should not bar consideration of his appeal because counsel was ineffective not at the time of the plea, but at sentencing. We emphatically reject this contention."); United States v. Jimenez, 106 F. App'x 92, 93 (2d Cir. 2004) (citing Monzon, 359 F.3d at 118 ("[A] claim of ineffective assistance is waived when . . . it attacks the sentence itself and not the underlying plea agreement that supported the sentence.")).

**C.     Evidentiary Hearing**

As indicated above, § 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

Here, this Court finds that no evidentiary hearing is warranted or required because Smith's motion and the record conclusively demonstrate that Smith is not entitled to relief under § 2255. See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to [the court]").

D.  **Certificate of Appealability**

For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). To make the required "substantial showing," Smith must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted). Smith has made no such substantial showing of the denial of a constitutional right in this case. A certificate of appealability will therefore not be issued.

## IV. CONCLUSION

For the reasons stated above, Smith's Motion to Vacate, Set Aside or Correct his Sentence is denied. If Smith wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of judgment in this action. Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit, in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction under 28 U.S.C. § 2255 (Docket No. 111) is DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8

L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE 16-CV-531S.

SO ORDERED.

Dated:      June 12, 2019
            Buffalo, New York

                                                    /s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                    United States District Judge